UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL AROSTEGUI-CAMPO,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>　　　　　　　　　Respondents. | Case No.: 25-CV-3064 JLS (MMP)<br><br>**ORDER (1) GRANTING IN PART WRIT OF HABEAS CORPUS AND (2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 1, 3) |

   Presently before the Court is Petitioner Fidel Arostegui-Campo's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1) and Motion for Temporary Restraining Order ("TRO," ECF No. 3). Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 9), and Petitioner's Traverse ("Traverse," ECF No. 10). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus

(ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 3).

## BACKGROUND

Petitioner, a Cuban national, has been detained by the United States Department of Homeland Security's Immigration and Customs Enforcement division at the Otay Mesa Detention Facility since October 21, 2025. Pet. at 5. Petitioner entered the United States around 1970[1] as a refugee with his mother. *Id.* at 4. On January 29, 1987, following a conviction of a controlled substance offense, an Immigration Judge ordered him deported to Cuba. *Id.* After being unable to remove Petitioner to Cuba, Petitioner was released. Ret. at 2. Petitioner was convicted of multiple subsequent offenses and sentenced to state custody. *Id.* Petitioner was transferred to immigration custody on October 27, 1993, and later released on January 26, 1994, on an Order of Supervision as ICE was unable to remove him to Cuba. *Id.* On April 20, 1995, "ICE re-detained Petitioner due to a criminal violation of his parole and transferred him to state custody on September 13, 1995." *Id.* Petitioner was released from state custody in 1998. *Id.* On March 8, 2000, Petitioner was convicted of another controlled substance offense and sentenced to state imprisonment. *Id.* Following his release, ICE re-detained Petitioner on September 11, 2003, and on February 6, 2004, again released him on an Order of Supervision due to failed repatriation efforts to Cuba. *Id.*

In the twenty-one years since his last release, Petitioner has reported to immigration officials every year, never missed an appointment, and never violated the terms of his supervision. Pet. at 4. Petitioner is married and has an eleven-year-old son. *Id.* Petitioner is employed, the sole income-producer of his family, and is a member of his neighborhood watch and the trade show union. *Id.* On October 21, 2025, Petitioner reported to ICE for his yearly check-in and was detained. *Id.* The only explanation being that his re-detention

---

[1] The Petition lists 1970 as the date of entry. Pet at 4. The Return lists 1971 as the date of entry. Ret. at 1.

was "due to the administration." *Id.* Petitioner was given a Notice of Revocation of Release with the standard language, "This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case." Ret. at 32 Ex. 4. Respondents state that at the time of Petitioner's re-detention he was "interviewed about his legal status to remain in the United States and was verbally informed that his Order of Supervision was being revoked and that he was being detained to execute his final order of removal." *Id.* at 2. Respondents allege that "ICE has been working diligently to effectuate his removal." *Id.* However, Cuba has denied accepting Petitioner. *Id.* Respondents state that "ICE identified Mexico as a third country where Petitioner may be removed," but "[w]hile in the process of pursuing removal efforts to Mexico, ICE was notified of the Court's order preventing Petitioner's removal." *Id.* at 3. Respondents further allege that, due to ICE's prior success obtaining Mexico's acceptances in similar cases, "ICE expects that Mexico will accept Petitioner for third country resettlement within a day of the request." *Id.* Therefore, the declaring officer concludes that "there is a significant likelihood of his removal in the reasonably foreseeable future." *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*,

138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of

the reasons for revocation" and be afforded "an initial informal interview promptly after [his] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." *Id.*

Here, Petitioner was ordered removed in 1987. Pet. at 4. Petitioner was released on an Order of Supervision several times, most recently in February of 2004, presumably, because his removal was not foreseeable. Ret. at 1–2; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner was re-detained by ICE agents at his annual ICE check-in on October 21, 2025. Pet. at 5. The only notice Petitioner received regarding the reasons for his re-detention was a form revocation letter and a statement from the ICE officer that "it was due to the administration." *Id.*; Traverse at 7; *see also Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). This notice simply states that the revocation was "based on a review of your official alien file and a determination that there are changed circumstances in your case." Traverse at 7. This plain statement is insufficient to provide notice. *See, e.g.*, *Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same).

Further, while ICE agents did conduct an interview immediately after detaining Petitioner, this interview could not have provided Petitioner with "an opportunity to respond to the reasons for revocation stated in the notification," 8 C.F.R. § 241.13(i)(3), because there was no notification. *See Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11

("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation."); *Rasakhamdee v. Noem*, No. 25-cv-2816-RBM-DEB, 2025 WL 3102037, at *4 (S.D. Cal. Nov. 6, 2025) (finding an identically worded written notification insufficient as "ICE's conclusory explanations for revoking [p]etitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview") (internal quotation marks and citations omitted). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Sarail A. v. Bondi*, ---- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. 2025).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)) (finding a likelihood of success where petitioner was not provided an informal interview). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of his supervised release without notice or an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have showed a change in circumstances such that there is now

a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. First, Petitioner has been subject to a final order of removal for thirty-eight years, and in those thirty-eight years, there has been no progress on securing his removal. Traverse at 6.

Second, Respondents failed to secure travel documents, or alleged potential for travel documents, for Petitioner *before* his re-detention. In the several times that Petitioner has been detained, the most recent ending in 2004, he was released because his removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this has changed. Petitioner has been rejected by his native country of Cuba and, while Respondents allege that Mexico likely will accept Petitioner, Petitioner alleges fear of removal to Mexico. Traverse at 6, 13–15. Petitioner argues, supported by a Declaration of Officer Martin Parsons, that Mexico will accept third-country deportees "only if [they] would willingly go to Mexico." *Id.* at 26 Ex. D. While it is possible that Petitioner may be removed to Mexico in the future, this post-hoc rationalization cannot form the basis of "changed circumstances" for the purpose of re-detention. *See Phakeokoth*, 2025 WL 3124341, at *5 (finding that changed circumstances did not exist at the time of petitioner's arrest because the government obtained travel documents weeks after his re-detention); *Truong*, 2025 WL 2988357, at *1–6 (same); *Vinh Duong v. Charles,* No. 25-cv-1375-SKO, 2025 WL 3187313, at *5–6 (E.D. Cal. Nov. 14, 2025) (same).

Third, the empty statement by the declaring officer that "there is a significant likelihood of his removal in the reasonably foreseeable future" is insufficient to satisfy Respondents' burden. Ret. at 3; *Hoac*, 2025 WL 1993771, at *4 (rejecting the government's argument that ICE's intent to apply for travel documents constituted changed circumstances because they failed to provide "any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around").

Therefore, because Respondents have failed to follow their own regulations in re-detaining Petitioner and have failed to demonstrate that his removal is reasonably foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting Order of Supervision. The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures set out in 8 C.F.R. § 241.13(i) and other implementing regulations. The Parties are **ORDERED** to file a Joint Status Report by November 28, 2025, confirming that Petitioner has been released. The Court **DENIES AS MOOT** Petitioner's Motion for a Temporary Restraining Order (ECF No. 3). The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: November 25, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge